UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN SEXTON SAND & GRAVEL CORP. | ) ) ) | |
| Plaintiff and Counter-Defendant, | ) ) | |
| v. | ) ) | Case No. 14-cv-9827 |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and TRANSAMERICA CORPORATION | ) ) ) ) | Judge Sharon Johnson Coleman |
| Defendants and Counterclaimants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Sexton Sand & Gravel Corp. ("Sexton") filed a complaint for declaratory judgment, asking this Court to find that its insurers, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Transamerica Corporation, have a duty to defend and indemnify Sexton in an underlying suit brought against it. National Union denied the allegations and counterclaimed, asking this Court to find there is no duty to defend and indemnify. National Union now moves for judgment on the pleadings [42] pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, the Court grants the motion.

**Background**

The instant lawsuit arises from National Union's denial of litigation defense coverage to Sexton in the underlying complaint, *Allied Waste Transp., Inc. v. Bellemead Dev. Corp. et al.*, No. 13-cv-1029 (N.D. Ill.).[1] In determining an insurer's duty to defend, the Court looks to the relevant facts alleged in the underlying complaint. *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund,* 704 F.3d 522,

---
[1] The underlying complaint alleged four counts against two defendants, Bellemead Development Corporation ("BDC"), who is not a party in this case, and Sexton. Counts I and II of the underlying complaint were brought against BDC and Counts III and IV were brought against Sexton.

525 (7th Cir. 2013). In that case, the plaintiff, Allied Waste Transportation, Inc., sought to recover from Sexton and its co-defendants costs incurred by the plaintiff in performing response actions at a site ("Congress Site") located in Hillside, Illinois, pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607. (Dkt 25-4, ¶1).

The Congress Site was a landfill in Hillside, Illinois, owned and operated by a partnership called Congress Development Company ("CDC"). (*Id.* ¶ 11.) Sexton formed the CDC pursuant to a partnership agreement ("the Agreement") with Browning-Ferris Industries of Illinois, Inc. ("BFI") in 1980. Dkt 25-4, ¶ 10. The Agreement provides that any capital needed for operating CDC shall be contributed by each partner in equal shares. (*Id.* ¶ 14.) Section 9.03 of the Agreement provides that each partner shall be "jointly liable and shall share equally in the payments of any and all judgments, claims, or penalties" for which the partnership or either partner is liable by reason of any acts or omissions related to the purpose of the partnership. (*Id.* ¶ 15.) In 1999, BFI assigned its interest in CDC to Allied Waste Transportation, Inc. ("Allied"). (*Id.* ¶ 18.)

There have been threatened or actual releases of hazardous substances from Congress Site, including into the groundwater. (*Id.* ¶ 27-28.) Three separate pollution-related suits were filed against CDC in 2006 and 2007. (*Id.* ¶¶ 33-43.) The first suit was brought by the Village of Hillside and alleged that the Congress Site violated Hillside's odor ordinance and created a public nuisance ("Hillside suit"). (*Id.* ¶ 33.) In the second suit, the owner of a hotel, Samuel J. Roti, sued CDC and alleged that odors and landfill gas from the Congress Site had migrated to the adjacent property, where the hotel was located, and negatively impacted Roti's business ("Roti suit"). (*Id.* ¶ 37.) The third suit was brought by the State of Illinois, alleging, inter alia, that CDC had violated the terms of the Congress Site's Clean Air Act permit ("Clean Air suit"). (*Id.* ¶¶ 39-40.) All three suits settled, and

in each case Allied contributed to paying the settlement costs owed by CDC, but Sexton did not contribute an equal share. (*Id.* ¶¶ 34-35, 38, 41.)

In addition to the costs of the lawsuits, CDC has incurred other costs related to remedying and mitigating pollution and operating a post-closure landfill in compliance with state and federal law. (*Id.* ¶¶ 53-54, 57.) Allied has contributed the capital to cover those costs. (*Id.* ¶¶ 55, 57.) Sexton has not contributed any capital to CDC since 2007. (*Id.* ¶ 55.) The Congress Site is currently closed, and since around 2008 has been in operation solely to perform "closure, post-closure, and remediation activities." (*Id.* ¶ 21.) Sexton subsequently filed the Complaint at issue, alleging that its insurer, National Union, had a duty to defend in the underlying suit brought by Allied against Sexton and wrongfully denied coverage. (Dkt. 19, Amend. Compl.).

During the briefing for National Union's motion now before the court, Sexton moved to strike a portion of National Union's reply brief, or in the alternative, for leave to file a sur-reply. Sexton argues that National Union raised a new argument in its reply brief that should not be considered unless Sexton has the opportunity to respond. However, the court agrees with National Union that the argument at issue is not a new argument but rather a response to Sexton's response. Accordingly, Sexton's motion for a strike or sur-reply [51] is denied.

**Legal Standard**

A party may move for judgment on the pleadings after the complaint and answer have been filed. *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). A court should grant the motion "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id.* (internal quotations and citation omitted). The construction of an insurance policy is a question of law in Illinois. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.,* 166 Ill. 2d 520, 529, 655 N.E.2d 842, 211 Ill. Dec. 459 (1995).

**Discussion**

National Union moves for judgment on the pleadings, asserting that the underlying *Allied* lawsuit does not create a potential for coverage under the National Union policies and therefore National Union had no duty to defend Sexton and its denial of coverage was proper. To determine whether an insurer has a duty to defend, courts compare the allegations in the underlying complaint with the relevant policy provisions. *Cent. Laborers' Pension Fund,* 704 F.3d at 525. If the facts alleged in the underlying complaint are "within or potentially within policy coverage," the insurer has a duty to defend. *Id.* "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005).

The commercial general liability insurance that National Union issued to Sexton provides for two types of coverage: coverage for damages for which the insured is liable because of "bodily injury" or "property damage" caused by an "occurrence" (Coverage A) and coverage for damages for which the insured is liable because of "personal injury" or "advertising injury" caused by certain enumerated offenses. (Coverage B). (Dkt 25-1 at 4-6; Dkt 25-2 at 18-20.) Among the enumerated offenses that can trigger coverage for "personal injury" is "[w]rongful entry into . . . [a] premises that the [injured] person occupies." (Dkt. 25-1 at 11; Dkt. 25-2 at 26.) Sexton does not dispute National Union's assertion that the "pollution exclusion" precludes coverage under Coverage A. Instead, Sexton argues that the wrongful entry provision of Coverage B triggers National Union's duty to defend because the underlying complaint alleges that odors, gas, and hazardous substances migrated from the Congress Site onto other property. National Union argues that wrongful entry coverage does not trigger a duty to defend unless the underlying complaint seeks to recover damages pursuant to a claim for a wrongful entry-type offense such as trespass or nuisance, which the underlying complaint does not do.

Illinois courts have found "wrongful entry" ambiguous enough to cover an injury caused by migration of a hazardous substance onto the property of another. *See, e.g., Millers Mut. Ins. Ass'n of Illinois v. Graham Oil Co.,* 668 N.E.2d 223, 231 (Ill. App. 1996). Thus, this Court must examine the two claims against Sexton in the underlying action to determine whether the claims are within or potentially within the "wrongful entry" provision. If either claim is potentially within the policy coverage, then National Union has a duty to defend Sexton against the entire suit. *See Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1015 n.2 (2010). In Count III of the *Allied* Complaint, Allied seeks recovery of remediation costs from Sexton pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), and in Count IV, Allied alleges that Sexton breached the Agreement to share the costs of the remediation.

*1. Count III*

Count III of the underlying complaint sets forth Allied's claim for recovery from Sexton of Allied's costs incurred in order to clean-up or remove hazardous substances from the environment or monitor, assess, prevent, minimize, or mitigate the release or threat of release of such substances ("response costs"). 42 U.S.C. §§ 9601 (23)-(25); 9607(a)(4)(B). Although the underlying complaint alleges that hazardous substances migrated from the Congress Site onto other property, National Union maintains that these allegations alone are insufficient to trigger a duty to defend because Allied seeks damages under CERCLA rather than pursuant to a trespass claim.

In support of its argument National Union cites *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664 (Ill. App. 2012). However, the holding in *Precision Dose* does not require that the underlying complaint ask for relief pursuant to common-law trespass or nuisance in order for wrongful entry coverage to apply. Rather, it merely requires a "nexus" between an allegation of conduct that constitutes trespass or nuisance and the legal basis for the underlying plaintiffs'

5

entitlement to relief. *Precision Dose,* 968 N.E.2d at 681. Nonetheless, the underlying complaint here does not establish such a nexus.

By its terms, wrongful entry coverage applies only when the entry is into property that the injured person *occupies*. Accordingly, only the Roti suit, not the Hillside or Clean Air suit, alleges wrongful entry. The damages incurred in the Hillside suit and the Clean Air suit did not arise out of the invasion of any private occupancy rights because those suits concerned the contamination of public property. Therefore, wrongful entry coverage only triggers a duty to defend Count III if there is a nexus between the CERCLA response costs sought and the damages incurred in the Roti suit.

This Court finds no nexus between the claim in Count III of the underlying complaint because Allied does not make clear which prior litigation, if any, is related to the response costs it is demanding from Sexton in Count III. Since a nexus between the invasion of a private property right and the response costs cannot be inferred from the underlying complaint, National Union has no duty to defend Sexton against Count III.

*2. Count IV*

This Court turns to Count IV to determine if the breach of contract claim is potentially within the wrongful entry provision. In Count IV of the underlying complaint, Allied alleges Sexton breached two provisions of the Agreement, Sections 9.03 and 2.01, which provide that each partner shall contribute in equal shares to judgments, claims, penalties, and operational costs. National Union argues that Allied's claim for breach of contract does not trigger a duty to defend because it is not a claim for any type of wrongful entry. As discussed above with respect to Count III, the relevant inquiry is whether there is a sufficient "nexus" between conduct alleged that constitutes trespass or nuisance and the legal basis for the underlying plaintiffs' entitlement to relief. *Precision Dose*, 968 N.E.2d at 681. Here, the nexus between the conduct constituting a trespass and the breach of contract is clear. The complaint alleges Allied and Sexton settled the Roti suit, but only Allied

6

contributed to payment of the settlement. Therefore, the source of a portion of costs that Sexton allegedly owes to Allied is the personal injury caused to Roti by wrongful entry onto his property. This Court finds however that an exclusion in the National Union policies nevertheless precludes coverage.

Coverage B contains a contractual liability exclusion that applies when "the insured has assumed liability in a contract or agreement." This exclusion's application to Count IV is "clear and free from doubt." *See Atl. Mut. Ins. Co. v. Am. Acad. of Orthopaedic Surgeons*, 734 N.E.2d 50, 56 (Ill. App. 2000). Pursuant to section 9.03 of the Agreement, Sexton and Allied's liability for wrongs committed by CDC is joint, not several, and therefore Sexton would owe nothing after Allied paid the settlement of the Roti suit on behalf of CDC. Based on this exclusion, this Court finds that National Union has no duty to defend Sexton against Count IV of the underlying complaint. Accordingly, National Union is entitled to judgment in its favor on the pleadings where neither claim in the underlying complaint is within or potentially within coverage of the policy.

**Conclusion**

For the foregoing reasons, plaintiff's motion for strike or sur-reply [51] is denied and defendant's motion to for judgment on the pleadings [42] is granted.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  December 11, 2015